# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW QUEEN, | Case No. 1:15-cv-00167-AWI-SAB-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| STU SHERMAN, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## I.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation and confined at California Substance Abuse Treatment Facility at Corcoran on a sentence of forty years to life for second degree murder with a firearm enhancement. (Pet. at 1-2).[1] Petitioner does not challenge his underlying conviction or sentence, but challenges the discipline imposed as a result of a rule violation report ("RVR") dated May 25, 2012.

On May 25, 2012, Officer J. Guerra heard a loud noise in the upper "C" section area and noticed four black inmates and four white inmates in an aggressive posture. Petitioner was

---
[1] Page numbers refer to the ECF page numbers.

1

identified as one of the white inmates. Officer Guerra ordered the inmates to get down, but they did not comply. Staff then sprayed Oleoresin Capsicum spray. Officer Guerra approached Petitioner and another inmate from behind and gave them an order to get down. They did not comply, so Officer Guerra sprayed them with MK-9 Fogger Oleoresin Capsicum spray. Petitioner then complied and laid down face first in the prone position.

Petitioner was charged in an RVR with Participation in a Racial Riot. A disciplinary hearing was held on June 24, 2012. Petitioner waived the presence of any witnesses at the hearing, but testified on his own behalf. Petitioner admitted that he decided not to get down until he could figure out what was going on. Petitioner believed that he failed to comply with a direct order, and did not participate in a race riot or unlawful assembly. Petitioner testified that there were no facts to support that a race riot had occurred.

After considering the evidence, the Senior Hearing Officer found Petitioner guilty of Participation in a Racial Riot and assessed a penalty of ninety days' lost credit, ten days loss of yard, 90 days temporary placement in Privilege Group C, and referred the matter to the Institutional Classification Committee for placement in a security housing unit. On July 3, 2012, the Chief Disciplinary Officer reduced the charge to Behavior Which Could Lead to Violence, a Division F offense, and reduced the loss of credit to thirty days.

After administratively appealing the decision, Petitioner filed a writ of habeas corpus in the Imperial County Superior Court on September 24, 2013. (ECF No. 12-1). On September 30, 2013, the Imperial County Superior Court denied the habeas petition. (ECF No. 12-6). On November 5, 2013, Petitioner filed a habeas petition in the Fourth Appellate District. (ECF Nos. 12-7, 12-8, 12-9). On November 27, 2013, the Fourth Appellate District denied the habeas petition. (ECF No. 12-10). On February 28, 2014, Petitioner filed a habeas petition in the California Supreme Court. (ECF Nos. 12-11, 12-12, 12-13, 12-14, 12-15). On May 14, 2014, the California Supreme Court summarily denied the habeas petition. (ECF No. 1 at 47).

## II.

## DISCUSSION

Petitioner argues that his rights were violated because he did not receive adequate notice

of the charge of Behavior that Could Lead to Violence and he was not afforded a hearing on this charge. (ECF No. 1 at 6-7). Respondent argues that Petitioner's federal rights were not violated when the Chief Disciplinary Officer modified the guilty finding to the charge of Behavior Which Could Lead to Violence, there was some evidence to support that charge, and the allegations of state law violations are not cognizable for federal habeas review.

### A. Standard of Review

This Court is limited to assessing whether the decision of the state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] case,' or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different result. Carey v. Muscadine, 549 U.S. 70, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006). Habeas relief is also available if the state court's decision "involved an unreasonable application" of clearly established federal law, or "was based on an unreasonable determination of the facts" in light of the record before the state court. Harrington v. Richter, 562 U.S. 86, 100, 131 S.Ct. 770, 785 (2011) (citing 28 U.S.C. § 2254(d)(1), (d)(2)). 131 S.Ct. 770, 785 (2011).

The AEDPA requires considerable deference to the state courts. "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits," and "evidence introduced in federal court has no bearing on 2254(d)(1) review." Cullen v. Pinholster, __ U.S. __, __, 131 S.Ct. 1388, 1398-99 (2011). "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)).

### B. State Law Claims

Petitioner argues that he was denied his rights under California law. Petitioner argues that he was not given notice of the Behavior Which Could Lead to Violence charge and not granted a hearing on that charge as required by California laws and regulations. This claim is

predicated on state law, which is not cognizable on federal habeas review. The federal writ of habeas corpus is not available for an alleged error in the application of state law, and habeas corpus cannot be utilized in federal court to try state issues *de novo*. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"); Sawyer v. Smith, 497 U.S. 227, 239 (1990) (quoting Dugger v. Adams, 489 U.S. 401, 409 (1989) ("[T]he availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution"). A habeas petitioner may not "transform a state law issue into a federal one" merely by asserting a due process violation. Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1997). In a federal habeas proceeding, a court is bound by the California Supreme Court's interpretation of California law unless the interpretation is deemed untenable or a veiled attempt to avoid review of federal questions. See Murtishaw v. Woodward, 255 F.3d 926, 964 (9ht Cir. 2001).

Here, there is no indication that any state court's interpretation of state law was untenable or associated with an attempt to avoid review of federal questions. Thus, to the extent that Petitioner's claims are based on alleged violations of state laws, such as the California Penal Code, his claims are not cognizable in this federal habeas proceeding.

**C. Due Process Claims**

The law concerning a prisoner's Fourteenth Amendment liberty interest in good time credit is set forth in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). While the United States Constitution does not guarantee good time credit, an inmate has a liberty interest in good time credit when a state statute provides such a right and delineates that it is not to be taken away except for serious misconduct. See id. at 557 ("It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior.").

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. Wolff, 418 U.S. at 539. Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. Id. at 556. Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison. Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) (citing Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454–455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1984)).

When a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. See Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563–67. A prisoner is entitled to advance notice so that he is informed of the charges and "to enable him to marshal the facts and prepare a defense." Wolf, 418 U.S. at 564.

Petitioner presented his claims in a habeas petition to the Fourth District Court of Appeal, which denied the claims in a well-reasoned decision. Petitioner then presented his claims in a petition for review to the California Supreme Court. The California Supreme Court summarily denied the petition. Federal courts review the last reasoned state court opinion. Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Avila v. Galaxy, 297 F.3d 911, 918 (9th Cir. 2002). Therefore, the Court must review the opinion of the Fourth District Court of Appeal. In rejecting Petitioner's claims, the appellate court stated as follows:

> Queen is correct that prison officials must provide notice within 15 days of the incident and the notice must specify the charges being brought against the inmate. (Pen. Code, § 2932, subd. (c)(1)(A).) After the hearing is completed, however, a chief disciplinary officer must review the disciplinary action and has the discretion to "affirm, reverse, or modify the disciplinary action." (Cal. Code Regs., tit. 15, § 33!2, subd. 03)(1).) The chief disciplinary officer is precluded only from imposing a greater penalty or more severe action, *not* from reducing a penalty. *(Id.* at subd. 03)(2).)

> Participating in a race riot and failing to refrain from behavior which might lead to violence are both in violation of section 3005 of title 15 of the California Code of Regulations. Queen presents no authority that demonstrates that the chief disciplinary officer could not modify the hearing officer's finding to instead find Queen guilty of the lesser offense of failing to refrain from behavior that could lead to violence.
>
> Queen also contends the evidence does not support a finding that he either participated in a race riot or behaved in a manner that could lead to violence. As discussed above, a correctional officer observed Queen and other inmates facing off in an aggressive posture with other inmates and refused to obey orders to lie down. This constitutes "some evidence" to support the finding that Queen behaved in a manner that could lead to violence. *(In re Zepeda* (2006) 141 CaI.App.4th 1493, 1500.)

(ECF No. 12-10).

Here, it appears that Petitioner received notice of the RVR on June 6, 2012. (ECF No. 12-2 at 2). The hearing was held on the disciplinary charge on June 24, 2012. (ECF No. 12-2 at 5). Therefore, Petitioner received notice over seventeen days before the disciplinary hearing, which described in detail the incident for which he faced disciplinary charges, and provided the date, time, and place of the incident. The fact that the Chief Disciplinary Officer modified the charge to Behavior Which Could Lead to Violence after the disciplinary hearing does not render the notice inadequate, particularly where, as here, the factual basis for both offenses was the same. See Bostic, 884 F.2d at 1270–71 (although incident report accused inmate of "stealing" when he was ultimately disciplined for possession of contraband, due process was satisfied because the incident report "described the factual situation that was the basis for the finding of guilt of possession of contraband and alerted Bostic that he would be charged with possessing something he did not own"); Zimmerlee v. Keeney, 831 F.2d at 188 (9th Cir. 1987) (notice of charges was sufficient when prisoner was provided information "to marshal facts to prepare his defense and to clarify the charges). The incident report made Petitioner aware of the factual basis underlying the charges against him; to wit, that after four white inmates, including Petitioner, and four black inmates were in an aggressive posture, Petitioner did not comply with orders to get down. After Petitioner was ordered to get down a second time by Officer Guerra, he still did not comply until Officer Guerra sprayed him with MK-9 Fogger. The facts in the

incident report were sufficient to apprise Petitioner that he could be subject to a charge of Behavior Which Could Lead to Violence.

Further, the incident report contained all of the facts necessary to enable Petitioner "to marshal the facts and prepare a defense," which he indeed did. Wolff, 418 U.S. at 564. Indeed, on every occasion throughout the disciplinary process, Petitioner denied the charge against him and defended his actions by explaining that he did not drop to the prone position when ordered to because he was trying to see what was happening. Whether Petitioner's acts constituted "Participation in a Racial Riot" or "Behavior Which Could Lead to Violence," he fails to explain how his defense could possibly have been different. Accordingly, Petitioner was provided with advance notice of the charges.

Petitioner also argues that prison officials did not afford him a full disciplinary hearing in adjudicating the Behavior Which Could Lead to Violence charge. Pursuant to California Code of Regulations 15 § 3312(b)(1), the Chief Disciplinary Officer of High Desert State Prison to find Petitioner guilty of Behavior Which Could Lead to Violence. California Code of Regulations 15 § 3312(b)(1) provides that:

> The chief disciplinary officer shall affirm, reverse, or modify the disciplinary action and/or credit forfeiture. The chief disciplinary officer may order a different action, order a different method of discipline, dismiss a charge, order a rehearing of the charge, or combine any of these actions.

Although Petitioner did not have a hearing on the charge of Behavior Which Could Lead to Violence, he did have a hearing in this matter at which he was able to present a defense. Petitioner points to no authority to support his claim that a new hearing must be conducted before a prisoner is found guilty of a different rule violation when the offense was "included" within the original offense charged. The Court notes that the hearing officer could have found Petitioner guilty of a different serious rule violation, so long as the offense was "included" within the original offense. See 15 CCR § 3315(f)(3). Therefore, it was permissible for the Chief Disciplinary Officer to make the modification, as the new offense was "included" within the original offense charged, and Petitioner did not need to receive a hearing on the new offense.

1 Petitioner does not dispute that he was provided the opportunity to call witnesses or
2 present evidence in his defense at the hearing, and he does not deny he was provided a written
3 statement by the factfinder of the outcome. As stated above, due process is satisfied if there is at
4 least "some evidence" to support the finding. Hill, 472 U.S. at 455.

5 In this case, there was "some evidence" to support the finding. The Senior Hearing
6 Officer, and subsequently the Chief Disciplinary Officer, reviewed the incident report which
7 contained the statement of the correctional officer who witnessed the incident and reports of
8 other officers who witnessed the incident. In his own statement, Petitioner said that after the
9 officers yelled "get down," he "decided not to get down until [he] could figure out what was
10 going on." The reporting employee, Officer Guerra, reported that he saw four Caucasian
11 inmates, including Petitioner, and four African American inmates in an aggressive posture.
12 Petitioner's behavior of being in an aggressive posture and then not complying with orders to get
13 down could have led to violence. Therefore, the "some evidence" standard is met.

14 Accordingly, the due process requirements were satisfied. The state court's decision is
15 not contrary to or an unreasonable application of clearly established federal law, nor is it an
16 unreasonable determination of facts in light of the evidence. Thus, the petition must be denied.

### III.

### RECOMMENDATIONS

20 Accordingly, IT IS HEREBY RECOMMENDED that:
21 1. Petitioner's petition for writ of habeas corpus be DENIED; and
22 2. Clerk of Court be directed to enter judgment and close the case.

23 This Findings and Recommendation is submitted to the assigned United States District
24 Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules
25 of Practice for the United States District Court, Eastern District of California. Within thirty (30)
26 days after service of the Findings and Recommendation, any party may file written objections
27 with the court and serve a copy on all parties. Such a document should be captioned "Objections
28 to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served

and filed within fourteen (14) days after service of the objections. The District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 24, 2015**

UNITED STATES MAGISTRATE JUDGE